Case 1:21-cr-20301-DPG   Document 1   Entered on FLSD Docket 05/12/2021   Page 1 of 14

FILED by ___KS___ D.C.

May 11, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. __21-20301-CR-GAYLES/TORRES__

18 U.S.C. § 1349
18 U.S.C. § 1001(a)(2)
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

vs.

JESSICA PALACIO,

        **Defendant.**
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At various times relevant to this Indictment:

1.  Clinical research trials, also known as clinical investigations, were research studies conducted on voluntary human subjects designed to answer specific questions about the safety or effectiveness of new drugs. Drug developers, or "sponsors," initiated and took responsibility for clinical research trials.

2.  The United States Food and Drug Administration ("FDA") was responsible for ensuring that drugs intended for human use were safe and effective. The FDA relied on the truthfulness and accuracy of the results of clinical research trials to make regulatory decisions about the approval of new drugs, with the ultimate goal of ensuring that all FDA-approved drugs were safe and effective for their approved uses in humans.

3.  Before beginning a clinical research trial, sponsors were required to provide the

FDA with extensive information regarding the proposed trial, including a detailed investigation plan known as a "study protocol." The study protocol described, among other things, the eligibility criteria for individuals to enroll as study subjects, schedules of tests and procedures, drug and dosage regimens, the length of the study, and the health outcomes to be measured by the study. Clinical research trials were required to be conducted according to the study protocol, as well as any applicable laws and FDA regulations.

4. Sponsors generally retained contract research organizations ("CROs") to oversee and conduct various aspects of clinical research trials. Sponsors and CROs typically contracted with multiple research sites to perform clinical research trials. Under such an arrangement, each individual research site was responsible for identifying study subjects, enrolling them into the study, performing the study, gathering data, and reporting the data to the sponsor and/or CRO, in accordance with the study protocol.

5. Each research site had a principal investigator, also known as a clinical investigator. The principal investigator was the individual responsible for conducting the clinical investigation at that site and ensuring that the clinical research trial was conducted according to the study protocol and in compliance with all applicable FDA regulations. Responsibilities of the principal investigator included personally conducting or supervising the study, including all requirements regarding the qualification of the subjects, the dispensation of study medication, and the collection and reporting of data; obtaining informed consent from study subjects; reporting adverse events that occur during the study; and ensuring that all employees working on the study meet those same obligations. Sub-investigators worked under the direction of and assisted the principal investigator in conducting clinical trials.

6. Principal investigators were also required, by regulation, to prepare and maintain

records relating to clinical research trials. These records, known as "case histories," included adequate records of the disposition of the study drug, including dates and quantities of drugs dispensed to subjects; informed consent forms and medical records for each subject participating in the clinical research trial; and records of all observations and other data pertinent to the investigation for each subject administered an experimental drug.

7. The FDA had the authority to inspect clinical investigators to ensure that investigators were complying with all applicable laws and regulations in conducting clinical trials. The FDA's inspection authority included the authority to review case histories and other records maintained by the clinical investigator.

8. Clinical investigators provided to the sponsor and/or CRO the information about each subject or enrollee in the study, including his or her medical history, laboratory results, and reaction to the drug under study. The sponsor then provided the information to the FDA for its use in evaluating whether the drug was safe and effective and should be approved for its intended use.

### The Defendant and Her Co-Conspirators

9. Unlimited Medical Research, LLC ("Unlimited Medical Research") was a medical clinic incorporated in Miami, Florida that conducted clinical research trials of new drugs for pharmaceutical companies and other sponsors. Unlimited Medical Research's principal place of business was on Grand Canal Drive in Miami-Dade County, Miami, Florida.

10. Defendant **JESSICA PALACIO** was a resident of Miami, Florida. From in or around December 2013 and continuing through in or around September 2015, **PALACIO** served as a study coordinator at Unlimited Medical Research.

11. Yvelice Villaman Bencosme was a resident of Hialeah, Florida, and licensed to

practice as a medical doctor in the State of Florida. From in or around October 2013, and continuing through in or around November 2016, Villaman Bencosme served as a clinical investigator at Unlimited Medical Research. Villaman Bencosme also operated a private medical practice in Pembroke Pines, Florida.

12. Lisett Raventos was a resident of Miami, FL. From in or around November 2013 and continuing through in or around March 2016, Raventos served as a study coordinator and co-owner of Unlimited Medical Research.

13. Maytee Lledo was a resident of Hialeah, Florida. From in or around December 1996 and continuing through in or around April 2016, Lledo was employed as a receptionist at Villaman Bencosme's private medical practice in Pembroke Pines, Florida.

14. Person 1 was a resident of Miami, Florida. From in or around May 2012 and continuing through in or around September 2017, Person 1 served as a co-owner of Unlimited Medical Research.

## The Clinical Trial

15. Between at least in or around May 2012 and at least in or around September 2017, Unlimited Medical Research was contracted to conduct clinical trials on behalf of sponsors and CROs located throughout the United States.

16. Among the clinical trials Unlimited Medical Research was contracted to conduct was a study (the "Study") designed to evaluate the safety and efficacy of an investigational drug intended to treat pediatric asthma in children between the ages of 4 and 11 with persistent asthma. The Sponsor ("Sponsor") was a multinational pharmaceutical company with a headquarters in the United States. The CRO ("CRO") was a contract research organization based in

4

Massachusetts that the Sponsor contracted with to monitor and oversee the Study.

17. Prior to beginning the Study, Unlimited Medical Research and Yvelice Villaman Bencosme, as principal investigator, entered into a "Clinical Trial Agreement" with the CRO, which was acting as an independent contractor for the Sponsor. The Clinical Trial Agreement required, among other things, that investigators follow the study protocol. At or around the same time, Bencosme, as the principal investigator responsible for conducting the trial, also signed a Form FDA 1572, in which she agreed to comply with the terms of the study protocol and all applicable FDA regulations.

18. The Study protocol required subjects to meet certain eligibility criteria to be enrolled in the study. For example, among other things, the Study required subjects to be between the ages of four and eleven, and have documented asthma.

19. The Clinical Trial Agreement between Unlimited Medical Research, Yvelice Villaman Bencosme, and the CRO, also included a schedule of payments the Sponsor would pay Unlimited Medical Research per study subject for each procedure, test, office visit, or other event required under the study protocol, in addition to other fees. The Clinical Trial Agreement required Unlimited Medical Research, in turn, to pay individual study subjects directly for their participation in the clinical trial. Unlimited Medical Research was generally required to pay study subjects upon successful completion of an office visit required by the Study protocol.

## COUNT 1
### Conspiracy to Commit Wire Fraud
### (18 U.S.C. § 1349)

1. The General Allegations section of this Indictment is re-alleged and incorporated as though fully set forth herein.

2. Beginning in or around September 2013 and continuing at least through in or

around April 2017, in Miami-Dade County, in the Southern District of Florida and elsewhere, the defendant,

## JESSICA PALACIO,

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with Yvelice Villaman Bencosme, Lisett Raventos, Maytee Lledo, Person One, and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is, to knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3. It was the purpose of the conspiracy for **JESSICA PALACIO** and her co-conspirators to unlawfully enrich themselves by securing a contract to conduct the Study, and causing the Sponsor and/or the CRO to make payments on that contract, by making material false and fraudulent representations regarding, among other things, subject eligibility for and participation in the Study.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **JESSICA PALACIO** and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4. On or about October 25, 2013, Yvelice Villaman Bencosme entered into a Clinical

Trial Agreement with the CRO, which was acting on behalf of the Sponsor, to conduct the Study. Villaman Bencosme agreed to conduct the Study at the Unlimited Medical Research site. As part of that agreement, Villaman Bencosme and Unlimited Medical Research agreed to conduct the Study according to and in compliance with the Study protocol and all applicable laws and regulations.

5. To increase the payments received from the CRO under the Clinical Trial Agreement, **JESSICA PALACIO** and her co-conspirators falsified the participation of subjects in the Study. The Defendant and her co-conspirators entered false information in the case histories of clinical trial subjects to make it appear that the subjects had, among other things, satisfied the eligibility criteria to participate in the Study, provided informed consent to participate in the Study, received a physical examination from Villaman Bencosme at Unlimited Medical Research in relation to the Study, received and been administered a Study drug, completed patient assessments required by the Study protocol, reported data as required by the Study protocol, and received payment for visits to Unlimited Medical Research as part of the Study.

6. **JESSICA PALACIO** and her co-conspirators recruited and enrolled subjects in the Study that they knew did not meet the eligibility criteria set forth in the Study protocol, including subjects that they knew did not suffer from the medical condition intended to be treated by the Study drug.

7. **JESSICA PALACIO** and her co-conspirators obtained and used personally identifiable information of third parties, including copies of identification documents such as drivers' licenses and birth certificates of the pediatric subjects and/or their parents or guardians, to enroll and falsely portray children as participants in the Study at Unlimited Medical Research. For example, Yvelice Villaman Bencosme and Maytee Lledo obtained personal identification

information, such as copies of birth certificates and drivers' licenses, from pediatric patient medical records maintained at Villaman Bencosme's private medical practice. **JESSICA PALACIO**, Yvelice Villaman Bencosme, Lisett Raventos, and Maytee Lledo used this identification information to create and maintain case histories which falsely portrayed Villaman Bencosme's patients as subjects who had consented to participate and in fact participated in the Study.

8. In order to prevent the Sponsor, the CRO, and the FDA from learning that the defendants had falsified the participation of subjects in the Study, **JESSICA PALACIO**, Yvelice Villaman Bencosme, Lisett Raventos, and Maytee Lledo fabricated written case histories, so that the case histories falsely and fraudulently represented that subjects had participated in the Study according to the protocol, when, in truth and in fact, those subjects had not participated in the Study according to the protocol.

9. **JESSICA PALACIO**, Yvelice Villaman Bencosme, Lisett Raventos, and Maytee Lledo caused false information to be entered in the case histories for the Study, to make it appear that subjects had, among other things, satisfied the eligibility criteria to participate in the Study, provided informed consent to participate in the Study, received a physical examination from a clinical investigator at Unlimited Medical Research, received the Study drug at Unlimited Medical Research, returned Study drug containers to Unlimited Medical Research, and received payment for visits to Unlimited Medical Research, when, in truth and in fact, and as **PALACIO**, Villaman Bencosme, and Raventos well knew, no such event had occurred.

10. To conceal the fact that the subjects were not actually participating in the Study as required by the protocol, one or more defendants discarded, without using, the Study drug provided by the Sponsor, and **JESSICA PALACIO**, Yvelice Villaman Bencosme, Lisett Raventos, and

Maytee Lledo caused false documentation to be placed in the case histories representing that subjects were taking the Study drug as required by the protocol.

11. The Study protocol required subjects to place daily telephone calls into an e-diary system, enter a confidential personal identification number specific to the subject, and answer questions to assess the subjects' drug usage, symptoms, and experience. In order to conceal the fact that the subjects were not actually participating in the Study as required by the protocol, **JESSICA PALACIO** knew that, at the direction of Villaman Bencosme and Person 1, Maytee Lledo placed hundreds of telephone calls to the e-diary system for the Study and provided false and fictitious answers in response to questions about the subjects' daily drug usage and experience.

12. The CRO, acting on behalf of the Sponsor, paid Unlimited Medical Research to conduct the Study. The CRO's payments, on behalf of the Sponsor, were deposited into the Unlimited Medical Research bank account, over which Lisett Raventos, Person 1, and others had control. Unlimited Medical Research bank account funds were distributed to **JESSICA PALACIO**, Yvelice Villaman Bencosme, Lisett Raventos, Maytee Lledo, Person 1, and their co-conspirators for participation in the clinical trial fraud scheme.

13. Between October 2015 and December 2016, Person 1, acting at the direction of Yvelice Villaman Bencosme, sent numerous electronic messages to the CRO, demanding that a final payment be issued to Unlimited Medical Research for the co-conspirators' purportedly legitimate work conducting the Study. In truth, and as Person 1 and Bencosme well knew, the co-conspirators had falsified the participation of subjects in the Study and had not conducted the Study pursuant to the clinical trial protocol, and consequently no payment should have been made by the CRO to Unlimited Medical Research.

14. To induce the Sponsor, through the CRO, to enter into a Clinical Trial Agreement

with and provide money to Unlimited Medical Research, **JESSICA PALACIO** and her co-conspirators made and caused others to make numerous materially false and fraudulent statements to the Sponsor, the CRO and/or the FDA, including, among other things, the following:

### Materially False Statements

(a) That Yvelice Villaman Bencosme and Unlimited Medical Research conducted the Study in accordance with the protocol;

(b) That enrolled subjects satisfied the eligibility criteria for the Study;

(c) That Villaman Bencosme conducted Study-related appointments with subjects at Unlimited Medical Research and in accordance with the Study protocol;

(d) That **JESSICA PALACIO** and Yvelice Villaman Bencosme obtained informed consent from subjects prior to their enrollment in the Study;

(e) That **JESSICA PALACIO** and other Unlimited Medical Research staff dispensed the Study drug to subjects;

(f) That **JESSICA PALACIO** and other Unlimited Medical Research staff informed subjects of the e-diary system and instructed subjects to create unique access codes and PIN numbers for that system; and

(g) That parents of subjects placed daily phone calls to the e-diary system as required by the Study protocol.

All in violation of Title 18, United States Code, Section 1349.

### COUNT 2
### False Statements
### (18 U.S.C. § 1001(a)(2))

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. On or about April 25, 2017, in Miami-Dade County, in Southern District of Florida,

in a matter within the jurisdiction of the United States Food and Drug Administration, an agency of the executive branch of the United States Government, the defendant,

### JESSICA PALACIO,

did knowingly and willfully make a false, fictitious, and fraudulent statement and representation as to a material fact, in that the Defendant represented in a signed affidavit that she had performed a screening visit for D.H. in the Study, when in truth and in fact, and as the Defendant then and there well knew, she had not performed a screening visit for D.H., in violation of Title 18, United States Code, Section 1001(a)(2).

### FORFEITURE ALLEGATIONS

1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for alleging forfeiture to the United States of America of certain property in which the defendant, **JESSICA PALACIO**, has an interest.

2. Upon conviction of a violation of, or a conspiracy to violate, Title 18, United States Code, Section 1343, as alleged in this Indictment, the Defendant shall forfeit to the United States any property, real or personal, which constitutes, or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3. If any of the property subject to forfeiture, as a result of any act or omission of the Defendant:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third person;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be subdivided

without difficulty,

the United States shall be entitled to the forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

GUSTAV W. EYLER
DIRECTOR
CONSUMER PROTECTION BRANCH
U.S. DEPARTMENT OF JUSTICE

JOSHUA D. ROTHMAN
KARA M. TRASTER
TRIAL ATTORNEYS
CONSUMER PROTECTION BRANCH
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

JESSICA PALACIO,

        Defendant.        /

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY***

Superseding Case Information:

**Court Division:** (Select One)
- [✓] Miami
- [ ] Key West
- [ ] FTL
- [ ] WPB
- [ ] FTP

New defendant(s)   [ ] Yes   [ ] No
Number of new defendants _____
Total number of counts _____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.
3. Interpreter: (Yes or No) **No**
   List language and/or dialect _____
4. This case will take **10** days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I    0 to 5 days        [ ]
   - II   6 to 10 days       [✓]
   - III  11 to 20 days      [ ]
   - IV   21 to 60 days      [ ]
   - V    61 days and over   [ ]

   (Check only one)
   - Petty         [ ]
   - Minor         [ ]
   - Misdemeanor   [ ]
   - Felony        [✓]

6. Has this case previously been filed in this District Court? (Yes or No) **Yes**
   If yes: Judge **Bloom**   Case No. **20-CR-20190**
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No) **No**
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____
   Is this a potential death penalty case? (Yes or No) **No**

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)? (Yes or No) **No**
8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? (Yes or No) **No**
9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? (Yes or No) **No**

                                              Joshua D. Rothman
                                              DOJ Trial Attorney
                                              Court ID No.   A5502447

*Penalty Sheet(s) attached

REV 3/19/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**     **JESSICA PALACIO**

**Case No:** _____

Count #: 1

   Title 18, United States Code, Section 1349

   Conspiracy to Commit Wire Fraud

**\*Max Penalty:**    Twenty (20) years' imprisonment

Count #: 2

   Title 18, United States Code, Section 1001(a)(2)

   False Statements

**\*Max Penalty:**    Five (5) years' imprisonment

Count #:

_____

_____

**\*Max Penalty:** _____

Count #:

_____

_____

**\*Max Penalty:** _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**