UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 21-cr-598-PLF |
| | : | |
| v. | : | |
| | : | |
| TERENCE SUTTON and | : | |
| ANDREW ZABAVSKY, | : | |
| | : | |
| Defendants. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT ZABAVSKY'S MOTION TO SUPRRESS TANGIBLE EVIDENCE, STATEMENTS, AND IDENTIFICATION EVIDENCE**

In his "Motion to Suppress Tangible Evidence, Statements, and Identification Evidence," defendant Andrew Zabavsky seeks to suppress evidence and argument concerning (1) his involvement in supervising Driving While Intoxicated ("DWI") cases and "allegations of improper crime lab procedures" relating to the civil suit filed against him and other MPD officers in *Rawlings v. District of Columbia* (D.D.C. 2011); and, (2) any negative inference stemming from his decision to shut his BWC off at the scene of Karon Hylton-Brown's fatal crash when continuing to speak with codefendant Terrence Sutton. (ECF 255). The United States agrees not to admit or make any argument relating to the allegations against defendant Zabavsky in the *Rawlings* case. However, this prohibition should not extend to admitting general evidence of defendant Zabavsky's training and expertise in DWI enforcement that is relevant to showing his guilty conscious and willingness to mislead MPD Watch Commander Franklin Porter. Furthermore, evidence of the timing of when the defendants shut off their body worn camera (BWC) should be permitted. Regardless of whether this violated the MPD General Order on operating BWC, it is still independently relevant to establishing that the defendants, in furtherance of their conspiracy, "[f]ewer than 21 minutes after the collision . . . turned off their BWCs, stood apart from all other

1

officers, engaged in a private conversation, and then immediately left the [crash] scene." Indictment ¶ 42. Defendant Zabavsky's motion should therefore be denied, in part because it is moot with respect to any admission of allegations in *Rawlings*, and because it seeks to exclude evidence relevant to the prosecuted offenses.

## ARGUMENT

### A. The Court Should Admit Evidence of Defendant Zabavksy's Training and Experience in DWI Enforcement

The United States agrees not to admit any evidence regarding the 2015 *Rawlings* civil suit filed against defendant Zabavsky and other MPD officials. The issue should thus be denied as moot.

However, the government may seek to introduce evidence that establishes defendant Zabavsky's DWI training and experience. This evidence is relevant because it proves misleading conduct by Zabavsky, both at the crash scene and back at the police station, where he met with his watch commander and claimed that Hylton-Brown was drunk, thereby giving his chain of command the false impression that this incident related, at least in part, to DUI enforcement. Evidence of the defendant's training and experience in DUI enforcement both establishes his experience in assessing drunk driving, and have been proven to be wholly counterfactual: Hylton-Brown's autopsy toxicology showed that he had no alcohol in his system at the time of his death, and no other officer (including defendant Sutton or any of the passenger officers in his car) ever made any reference to intoxication as a basis for stopping Hylton-Brown. Evidence of defendant Zabavsky's DWI training and experience should therefore be admitted without limitation.

The evidence at trial, including BWC footage, will show that defendant Zabavsky told a witness on scene that Hylton-Brown was "drunk." About 10 minutes after arriving on scene, defendant Zabavsky was confronted by a witness about why officers had chased Hylton-Brown.

Defendant Zabavsky replied, "Trying to do a traffic stop. They were trying to pull him over. Because he was all over the sidewalk. Then he went flying through the alley." He then remarked, "he's really drunk. I mean he's alright. He's drunk" and walked away.

Over an hour later at the Fourth District police station, the defendants for the first time notified a senior MPD official, Watch Commander Franklin Porter, about this incident. After misleading Watch Commander Porter about the nature of their interaction with Hylton-Brown and the crash (including the duration of the incident, the manner in which defendant Sutton pursued Hylton-Brown, and the nature of the crash and his injuries), defendant Zabavsky told Watch Commander Porter that he believed Hylton-Brown was intoxicated and was slurring his words. Watch Commander Porter later told federal investigators that this comment gave him the impression that this incident could be related to DUI enforcement. However, there is no mention about Hylton-Brown being intoxicated in the PD10 incident report drafted by defendant Sutton that details the incident, and no alcohol was found in Hylton-Brown's blood.[1]

Given his background in DUI enforcement, defendant Zabavsky's statements about Hylton-Brown's intoxication to an on scene civilian and to Watch Commander Porter evidence the misleading nature of his comments. Defendant Zabavsky's training and experience in DWI detection both imbued him with the ability to better identify drunk drivers and imparted greater authority to his assessment that Hylton-Brown was drunk. Evidence of defendant Zabavsky's DWI training and experience are thus relevant to clarifying the intent behind defendant Zabavsky's statements that Hylton-Brown was intoxicated. His DWI training and experience should therefore be admitted.

---

[1] The toxicology report did show the presence of marijuana and opiates.

**B. Evidence and Argument About the Timing of BWC Deactivation on Scene Is Admissible Under Rule 403**

Defendant Zabavsky argues that evidence and argument about the timing of his BWC deactivation should not be permitted because he did not violate the MPD policy on BWC operation. (at 6). Admission of this evidence does not rest on violation of MPD policy. Rather, the evidence should be admitted because it is relevant and admissible under Rule 403 to prove an overt act charged in the Indictment: that prior to leaving the scene, having had their BWCs activated and running throughout their time there, both defendants stepped away from the other officers on the scene, turned off their cameras, conferred privately for several minutes, and then immediately left the crash scene (without designating any other officer or official to be in charge in their place) to return to the police station. Upon arriving, defendant Sutton started drafting an inaccurate police report that minimized the extent of Hylton-Brown's critical injuries.[2]

Evidence of the timing of their deactivation is necessary, relevant, and should be admitted to proving the criminal scheme charged in the Indictment. The evidence at trial will show that prior to the chase, the defendants, driving two separate squad cars, together approached Hylton-Brown to try to pull him over. They both activated their lights and sirens and pursued Hylton together for over one minute. Defendant Zabavsky then broke off from defendant Sutton and drove a parallel route that took him past the mouth of the alleyway where the crash occurred. At the moment of the fatal crash, defendant Zabavsky was in the midst of executing a U-turn to return back in the direction of that same alleyway.

---

[2] The defendants' BWCs end when they turn off their cameras; however, another officer's BWC shows them, at a distance, standing alone and talking for approximately three minutes, and then leaving the scene in their respective MPD vehicles after their conversation ends.

On scene, captured on BWC, the defendants conferred with each other and agreed that defendant Sutton would write the police report; they then separately told a junior officer who had already started gathering information for the report to stand down. All the while, neither defendant notified any senior officials about the pursuit, accident, or Hylton-Brown's visibly critical, and quickly worsening, condition. Moreover, neither defendant notified the Major Crash Unit ("MCU") responsible for investigating collisions involving serious bodily injury or death, or the Internal Affairs Division ("IAD"), which is responsible for investigating officer-involved incidents. Because of these decisions by the very officers involved in chasing Hylton-Brown, the on-scene investigation was handled as a minor traffic accident despite clear indicia of an incident that should have involved several specialized investigations under established MPD protocols.

Approximately 25 minutes after the crash, the defendants deactivated their BWC at the same time and walked toward defendant Zabavsky's squad car where they conversed together for about three minutes out of earshot of any officer. After separating, defendant Zabavsky immediately drove by himself to the Fourth District police station. Defendant Sutton walked directly over to his car, directed his three passengers to get inside, and also drove back to the Fourth District. Once back at the station, defendant Sutton sat at a computer and wrote a narrative of the incident that misrepresented the injuries to Hylton-Brown, despite being told by another officer (who had given Hylton-Brown first aid on the scene) that the account was inaccurate. Both defendants also jointly met with the Watch Commander and provided him with a misleading account of the incident that minimized the officers' involvement, asserted that there was no police chase, and omitted mention of any injuries to Hylton-Brown—all of which were notifications that would have triggered involvement by MCU and IAD.

5

Against this backdrop, the defendants' simultaneous decision to turn off their BWCs and confer privately before quickly returning to the police station is one more relevant, probative instance of conduct that demonstrates their corrupt intent. It also provides relevant, circumstantial evidence of their agreement to continue to engage in misleading conduct at the police station to cover up the true circumstances of this incident, which is an element the government must establish to prove the offense of conspiracy, in violation of 18 U.S.C. § 371. This is true regardless of whether it violated the MPD BWC general order policies and procedures. Given the significant probative value of this evidence, and the absence of any unfair prejudice to the defendant that outweighs that value, evidence concerning the timing of when both defendants deactivated their BWC should be admitted.

## CONCLUSION

The government agrees not to admit evidence of any civil suit against defendant Zabavsky's relating to his involvement in the DWI law program. Evidence of his DWI training and experience, more generally, as well as evidence of the timing of the defendants' deactivation of BWC—three minutes before leaving the scene while conversing privately together—should be admitted.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By: _____
AHMED BASET
IL Bar No. 6304552
RISA BERKOWER
NY Bar No. 4536538
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
601 D St., N.W.
Washington, D.C. 20532
Phone: (202) 252-7097 (Baset)
       (202) 252-6782 (Berkower)
Email: Ahmed.Baset@usdoj.gov
      risa.berkower@usdoj.gov